**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

NATHANIEL FITZGERALD
ADC #84210                                                                                                   PLAINTIFF

V.                                                  3:10CV00078 SWW/JTR

TERESSA BONNER, Chief Jailer,
Crittenden County Detention Center, et al.                                              DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Susan Webber Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the United States District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1.        Why the record made before the Magistrate Judge is inadequate.

2.        Why the evidence to be proffered at the requested hearing before the

>    United States District Judge was not offered at the hearing before the Magistrate Judge.
>
> 3.  An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Jonesboro Divisional Office
> 615 South Main, Room 312
> Jonesboro, Arkansas 72401

## I. Introduction

Plaintiff, Nathaniel Fitzgerald, is a prisoner in the East Arkansas Regional Unit of the Arkansas Department of Correction. He has commenced this *pro se* § 1983 action alleging that Defendants violated his constitutional rights while he was confined in the Crittenden County Detention Center ("CCDC"). *See* docket entry #13.

Defendants have filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Facts.[1] *See* docket entries #37, #38, and #39. Plaintiff has filed four Responses, a

---

[1] It is well settled that summary judgment should only be granted when the record, viewed in a light most favorable to the nonmoving party, shows that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of informing the court of its basis for the motion and identifying the parts of the record that show lack of a genuine issue. *Celotex,* 477 U.S. at 323. To defeat a motion for summary judgment, the nonmoving party must go beyond the pleadings and establish "by affidavits, or by the depositions, answers to interrogatories, and admissions on file," that specific facts show a genuine issue for trial exists. *See* Fed R. Civ. P. 56(c); *Celotex,* 477 U.S. at 324.

Brief in Support, and an Affidavit  *See* docket entries #48, #49, #50, #51, #52, and #53.

Before discussing the merits of Defendants' Motion, the Court will summarize the relevant, undisputed facts:

1.      On March 11, 2010, Plaintiff was a pretrial detainee in the EM pod at the CCDC. *See* docket entries #13 and #39.

2.      At approximately 7:00 a.m., Plaintiff and detainee Jerome Williams got into an argument about whose turn it was to empty a pan of water by the toilet. *Id.* During the argument, Williams attempted to hit Plaintiff. *Id.* However, another detainee grabbed Williams and prevented him from doing so. *Id.*

3.      Approximately ten minutes later, Plaintiff reported Williams attempted attack to Supervisor Juliette Hancock as she passed by EM Pod. *Id.* Hancock, who is *not* a Defendant in this action, told Plaintiff to return to his cell in the pod. *Id.* While Plaintiff was doing so, Williams "jumped" Plaintiff, and began to beat him with his fists. *Id.* Hancock stopped the altercation, and locked Plaintiff and Williams in separate cells in the pod. *Id.*

4.      Around 8:00 a.m., there was a shift change at the CCDC. *Id.* According to Plaintiff, Hancock left the CCDC without informing the next shift that Plaintiff and Williams should remain separated. *Id.* Soon thereafter, unspecified CCDC officers unlocked the individual cell doors allowing Williams and Plaintiff to enter the day room of the pod. *Id.*

5.      Around 6:00 p.m., the detainees in the pod were eating dinner in the day room when Williams allegedly interjected himself into a conversation Plaintiff was having with another detainee. *Id.; see also* docket entry #39, Ex. 13. *Id.* When the pair told Williams to mind his own

business, Williams attacked Plaintiff by punching him several times in the head and chest. *Id.*

6. According to Plaintiff, no CCDC officials intervened to stop the attack, which ceased a few minutes later. *Id.* Plaintiff then crawled to the sally port area of the pod and summonsed help from Officer Smith and Supervisor Hall, neither of whom are Defendants in this action. *Id.* Hall ordered that Plaintiff be taken to the booking area, and he called an unspecified nurse at home. *Id.* However, the nurse did not return to the CCDC that night. *Id.*

7. On March 12, 2010, at 9:15 a.m., Defendant Nurse Mandy Childress examined Plaintiff. *See* docket entry #39, Ex. 2. She observed a "small bump" on the right side of Plaintiff's forehead with "minimal swelling." *Id.* She also noted that Plaintiff complained of pain on the right side of his rib cage, but that he was not in distress. *Id.*

8. On March 18, 2010, Defendant Dr. Shrader ordered a chest x-ray, which was taken that same day at a private outpatient radiology clinic in West Memphis, Arkansas. *See* docket entry #39, Ex. 6. The x-ray revealed "no acute abnormalities." *Id.*

9. On March 23, 2010, Plaintiff filed a grievance and a medical request form complaining of chest pain. *See* docket entry #39, Ex. 3 at 9 and 10. Later that day, Defendant Nurse Lindsey Peterson arrived at the pod, but Plaintiff refused to be examined. *Id.* Defendant Peterson noted, on the bottom of Plaintiff's medical request form, that he did not appear to be in any distress and that he talked and ambulated without any difficulty. *Id.*

10. On March 26, 2010, Plaintiff filed a medical request form stating that he had spit up blood the previous night. *See* docket entry #39, Ex. 3 at 11.

11. On March 29, 2010, Defendant Childress examined Plaintiff. *Id.* She explained to Plaintiff that his March 18, 2010 chest x-ray was normal. *Id.* Plaintiff then told Defendant Childress

that he "was fine" and "having no problems." *Id.*

12. On April 14, 2010, Plaintiff was transferred from the CCDC to the ADC. *See* docket entry #39, Ex. 1.

## II. Discussion

Based on these facts, Plaintiff contends that: (1) Defendants Busby, Bonner, and Boyd failed to protect him from the March 11, 2010 attack by Williams; and (2) Defendants Childress, Peterson, and Shrader failed to provide him with adequate medical care for the injuries he sustained in the attack. *See* docket entry #13. Plaintiff brings these claims against Defendants in both their individual and official capacities. *Id.* The Court will address each claim separately.

**A.     Failure to Protect Claim Against Defendants Busby, Bonner, and Boyd**

**1.     Individual Capacity Claim**

The Supreme Court has clarified that being assaulted by other inmates or detainees is not "part of the penalty that criminal offenders [must] pay for their offenses." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, prison officials do not commit a constitutional violation every time one prisoner attacks another. *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007); *Blades v. Schuetzle*, 302 F.3d 801, 803-04 (8th Cir. 2002). To prevail on his failure to protect claim, Plaintiff must demonstrate that: (1) objectively, there was a substantial risk of serious harm; and (2) subjectively, the Defendants knew of and disregarded that substantial risk of serious harm.[2] *See Lenz v. Wade*,

---

[2] Because he was a pretrial detainee, Plaintiff's failure to protect claim is analyzed under the Fourteenth Amendment, instead of the Eighth Amendment *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). However, the Eighth Circuit has applied the same deliberate indifference standard to failure to protect claims based on either the Fourteenth or Eighth Amendment. *Crow v. Montgomery,* 403 F.3d 598, 601 (8th Cir. 2005).

490 F.3d 991, 995-996 (8th Cir. 2007); *Crow v. Montgomery,* 403 F.3d 598, 601 (8th Cir. 2005).

Plaintiff makes much of the fact that Supervisor Hancock failed to transfer Williams out of EM pod and into an isolation cell after she saw him attack Plaintiff at 7:00 a.m. *See* docket entries #13 and #48 through #53. Plaintiff also expresses displeasure with her alleged failure to inform the 8:00 a.m. shift that he and Williams should remain separated. *Id.* According to Plaintiff, the 6:00 p.m. attack would not have occurred if Hancock had taken either course of action. *Id.*

However, neither Hancock nor the officers who allegedly let Williams out of his locked cell have been named as Defendants in this action. Instead, Plaintiff has named Defendants Bonner, Busby, and Boyd.

There is no vicarious liability in § 1983 actions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (U.S. 2009); *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (holding that the "general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support [§ 1983] liability"). Thus, Plaintiff must establish that Defendants Bonner, Busby, and/or Boyd personally knew of and disregarded a substantial risk of serious harm that Williams would attack him. *See Lenz,* 490 F.3d at 995-996; *see also Schoelch v. Mitchell,* 625 F.3d 1041, 1046 (8th Cir. 2010) (explaining that a defendant "must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").

In their Affidavits, Defendants Bonner and Boyd state that they had *no knowledge* that Williams "was violent;" "had a propensity to attack anyone;" or had "threatened" Plaintiff or "been involved in any previous altercations with Plaintiff." *See* docket entry #39 at ¶¶ 22-25. Although he has been given the opportunity to do so, Plaintiff has failed to come forward with *any evidence*

to refute those facts or otherwise demonstrate that Defendants Busby, Bonner, or Boyd subjectively knew of and disregarded a substantial risk that Williams would attack Plaintiff on March 11, 2010.[3] Accordingly, the failure to protect claim that Plaintiff has raised against them, in their individual capacities, should be dismissed, with prejudice.

### 2. Official Capacity Claim

County officials may be held liable, in their official capacities, if a constitutional violation is committed pursuant to an official policy, custom, or practice.[4] *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Johnson v. Blaukat*, 453 F.3d 1108, 1114 (8th Cir. 2006). Importantly, the official policy, custom, or practice must be the "cause of" or "moving force behind" the constitutional violation. *Monell,* 436 U.S. at 694; *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009); *Grayson v. Ross,* 454 F.3d 803, 810-11 (8th Cir. 2006).

Plaintiff does not allege nor has he produced any evidence demonstrating that the alleged

---

[3] On March 11, 2010, Plaintiff wrote a grievance stating that Officer Hancock should have moved Williams out of EM pod and into an isolation cell after she saw him attack Plaintiff around 7:00 a.m. *See* docket entry #39, Ex. 3 at 3. The grievance does not mention the 6:00 p.m. attack by Williams. *Id.* Thus, it appears that it was written sometime between the 7:00 a.m. and 6:00 p.m. attacks. *Id.*

The grievance form instructs the writer to indicate whether it is directed to the "Jail Administrator" (which is Defendant Boyd) or the "Chief Jailer" (which is Defendant Bonner). Plaintiff did not do so. More importantly, the date received and administrator signature lines are blank. Thus, there is no indication that Defendants Boyd, Bonner, or Busby saw the grievance or were otherwise aware of the allegations Plaintiff raised therein. *See Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003) (explaining that negligence in failing to detect a substantial risk of harm does not rise to the level of a constitutional violation).

[4] Sovereign immunity, under the Eleventh Amendment, only applies to state entities and officials, and not to counties entities or officials. *N. Insur. Co. of N.Y. v. Chatham County,* 547 U.S. 189, 193 (2006); *Land v. Washington County, Mn.*, 243 F.3d 1093, 1095 n.3 (8th Cir. 2001)(explaining that: "A suit against a county is not regarded as a suit against the state within the meaning of the Eleventh Amendment").

failure to protect him from Williams' March 11, 2010 attack was caused by or the result of a CCDC policy, custom, or practice. Accordingly, this claim should be dismissed, with prejudice.

**A.     Inadequate Medical Care Claims Against Defendants Childress, Peterson, and Shrader**

**1.     Individual Capacity Claim**

For Plaintiff to prevail on his inadequate medical care claims against these Defendants, he must prove that: (1) he had an objectively serious medical need; and (2) prison officials subjectively knew of, but deliberately disregarded, that serious medical need.[5] *Estelle v. Gamble,* 429 U.S. 97 (1976); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

As to the first element, it is questionable whether Plaintiff suffered any objectively serious medical injuries during the attack because Defendant Childress determined, on the following morning, that he had a small bump on his forehead, with minimal swelling, and that he was not in any distress. In abundance of caution, Defendant Shrader ordered an x-ray of Plaintiff's chest, which revealed no abnormalities. Finally, three days after he reported spitting up blood, Plaintiff told Defendant Childress that he was "fine." At the summary judgment stage, the Court will resolve this doubt in Plaintiff's favor and conclude that his injuries constituted an objectively serious medical need.

---

[5] Although it is unclear, it appears that Plaintiff was convicted of a felony on March 16, 2010. *See* ADC website at www.adc.arkansas.gov/inmate_info. Plaintiff's inadequate medical care claim while he was a pretrial detainee is analyzed under Fourteenth Amendment. After March 16, his inadequate medical care claim must be analyzed under the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). However, the Eighth Circuit has applied the same deliberate indifference standard to inadequate medical care claims based on either the Fourteenth or Eighth Amendment. *See Vaughn v. Greene County, Ark.*, 438 F.3d 845, 850 (8th Cir. 2006).

As to the second element, it is clear that Defendants were not deliberately indifferent to Plaintiff's need for medical care because it is undisputed that: (1) Defendant Childress examined Plaintiff after the attack and after he reported spitting up blood; (2) Defendant Shrader ordered an x-ray to ensure that Plaintiff had not suffered any broken ribs in the attack; and (3) Defendant Peterson attempted to examine Plaintiff when he complained of chest pain, but he refused to allow her to do so.

In his summary judgment papers, Plaintiff alleges that Defendants erred when they failed to order an x-ray of his head. *See* docket entries #13 and #48 through #53. However, as previously mentioned, Defendant Childress detected only a small bump on Plaintiff's head and no other symptoms suggesting that an x-ray was needed. Moreover, it is well settled that negligence, gross negligence, or a mere disagreement with the treatment decisions does not rise to the level of a constitutional violation. *Langford,* 614 F.3d at 460; *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006). Specifically, the Supreme Court has explained that "the question whether an x-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment" that does not rise to the level of a constitutional violation. *Estelle*, 429 U.S. at 107.

Plaintiff also alleges that his constitutional rights were violated because he did not receive an x-ray until a week after he was attacked. *See* docket entries #13 and #48 through #53. However, a prisoner alleging a delay in medical treatment that rises to the level of a constitutional deprivation must place verifying medical evidence in the record to establish the detrimental effect of the alleged delay in medical treatment. *Gibson*, 433 F.3d at 646-47; *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997). In other words, an inmate must show that a defendant ignored a critical or

escalating medical situation, or that the delay adversely affected the inmate's prognosis. *Id.*

Although he has been given the opportunity to do so, Plaintiff has failed to produce *any* verifying medical evidence suggesting that Defendants ignored an escalating medical situation or that he was harmed, in any way, by the one-week delay in obtaining an x-ray. Accordingly, Defendants Childress, Peterson, and Shrader are entitled to summary judgment on the inadequate medical care claim Plaintiff has raised against them in their individual capacities.

### 2. Official Capacity Claim

To prevail on the inadequate medical care claim raised against Defendants, in their official capacities, Plaintiff must establish that a CCDC policy, custom, or practice was the "cause of" or "moving force behind" the alleged lack of adequate medical care. *See Monell,* 436 U.S. at 694; *Jenkins,* 557 F.3d at 633; *Grayson,* 454 F.3d at 810.

For the previously discussed reasons, Plaintiff has failed to demonstrate that he was provided with constitutionally inadequate medical care for any injuries he suffered as a result of the March 11, 2010 attack. Further, he has not alleged or presented any evidence establishing that any alleged lack of adequate medical care was the result of a CCDC policy, custom or practice. Thus, Defendants Childress, Peterson, and Shrader are also entitled to summary judgment on the inadequate medical care claim Plaintiff has raised against them in their official capacities.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.  Defendants' Motion for Summary Judgment (docket entry #37) be GRANTED, and that this case be DISMISSED, WITH PREJUDICE.

2.  The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis*

appeal from any Order and Judgment adopting this Recommended Disposition would not be taken in good faith.

Dated this _3rd_ day of May, 2011.

                                                                       /s/ J. Thomas Ray
                                     UNITED STATES MAGISTRATE JUDGE